ISABEL BLANES MANGUAL, Plaintiff and Appellant, v. RICARDO MESTRE ET AL., Defendants and Appellees.

No. 11781. Decided September 6, 1961.

*Heriberto Torres Solá* for plaintiff-appellant. *Miguel Marcos Contreras* and *Miguel Marcos Morales* for defendants-appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, and Mr. Justice Serrano Geyls and Mr. Justice Rigau.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

This is an action for a declaratory judgment requesting the court to decree that the three real properties described in the complaint are the separate property of plaintiff, Isabel Blanes Mangual.

Plaintiff was married for the first and only time to Salvador Mestre Caparrós, who died on June 13, 1951 under open will. The testator did not leave any forced heirs and designated as his sole and universal voluntary heirs his wife Isabel Blanes as the lifetime usufructuary of all his property and also Enrique and Ricardo Mestre Caparrós and Eladia San Millán Caparrós in the naked ownership of said property in equal parts. Enrique Mestre Caparrós died in Aguadilla prior to the testator.

The widow and the other two heirs could not reach an agreement as to a plan for the division of the property left by Mestre on account of a conflict mainly arising over the

separate or community nature of the three properties described in the complaint. It was this conflict that gave rise to the present suit.

In her first cause of action plaintiff alleges that on the death of her husband and since November 14, 1940 she was owner in fee simple by the title recorded in the Registry of Property as her separate property, of a lot consisting of 690 square meters on Magdalena Avenue in Santurce bounded in part on the east by Villamil Street; that from December 1940 to March 1941 plaintiff built on said lot with her separate money two concrete houses for $5,000 each; that she paid said $10,000 with part of the cash she received in 1937 upon selling for $50,000 three interests that she held in three rural properties which she had inherited in 1926 from her parents Rafael Blanes Mestre and Georgina Mangual Delgado; that said buildings have not been recorded in the Registry of Property nor have any additions or improvements been made on them.

In the second cause of action she alleges that since 1940 she is the owner in fee simple by title recorded in the Registry of Property, as her separate property, of another lot of 278.1375 square meters located on Caribe Avenue, Condado section, Santurce, Puerto Rico; that from March to June 1940 she built a concrete house of $5,000 on said lot with her own separate money, to which no addition or improvement has been made nor has it been recorded in the Registry of Property; that said $5,000 proceeded from the following sources: $4,600 from her parents' inheritance (sale of three condominia for $50,000) and $360 from a legacy of $500 made to her by her aunt Carmen Mangual Delgado.

In the third cause of action she alleges that by a public deed executed in 1927, Hermógenes P. Vargas and his wife Rita Nival executed a voluntary mortgage in favor of Salvador Mestre in order to guarantee a $5,500 loan for a house and lot located on Parque Street in Santurce; that Hermó-

genes Vargas having died and the terms of the contract being unfulfilled, Salvador Mestre, represented by his lawyer Francisco Soto Gras, filed an ordinary mortgage foreclosure proceeding which ended in 1929 with the sale at public auction and award of the mortgage property to said Salvador Mestre; that the $5,500 loaned to Hermógenes P. Vargas belonged at the time of the loan, to the plaintiff as her own separate property; that out of the sum of $5,500, $5,000 proceeded from the proceeds of the sale to Emeterio Ramírez Martí, nineteen days prior to the loan, of a condominium in a property located in the Guanajibo Ward of Mayagüez which she had acquire by inheritance from her parents, and the other $500 from a gift inter vivos of $2,000 made to her by her father Rafael Blanes; that although the deed of mortgage loan was executed in the name of Mestre, as if it were community property, plaintiff did not deem it necessary then to correct the error for reasons of consideration and confidence; that after the adjudication of said property to Mestre, plaintiff improved it by adding to the building two more concrete stories and built three garages and three rooms with bathrooms for servant quarters at the rear of the lot thus eliminating the mirador and carport which were originally part of the property; that this work was done at a cost of $8,422.15 with money exclusively her own, to wit: $1,500 from a gift inter vivos of $2,000 made by her father Rafael Blanes Mestre; $4,000 that belonged to her as the cash inheritance from said parents in Puerto Rico; $1,000 from a legacy left to her by Isabel Delgado, her godmother, and $1,900.15 left her in cash by her father at his death in Spain.

Defendants' answer denies the essential facts of the complaint in its three causes of action, especially those alleged to the effect that plaintiff had acquired during her marriage to Salvador Mestre Caparrós, the lots and houses described in said complaint with her own separate money and as her separate property. They accepted that during her marriage

to Mestre, plaintiff had received the $50,000 from the sale to the heirs of Mateo Fajardo of property she inherited from her parents and that she also received the $5,000 from the sale of her separate condominium in the property located in the Guanajibo Ward, Mayagüez. They also alleged, for present purposes, that they have not signed the draft of deed for the division of Mestre's property prepared by plaintiff's notary because she has not justified with authentic proof the source of the difference between the $55,000 that they admit she received as separate money during the marriage and the $70,000 that she alleges having received as separate property; and neither has she justified with authentic proof that the buildings mentioned in the complaint were made with her own separate money. The answer contains a so-called New Matter which turns on the steps taken by the parties related with the draft of deed for the partition of the estate prepared by plaintiff's lawyer, which as already noted, was never signed.

After holding a pretrial hearing before a judge and a trial on the merits before another judge, the trial court rendered judgment stating that the three urban properties described in the complaint must be and are community property of the conjugal partnership of Salvador Mestre Caparrós, attorney at law, and Isabel Blanes Mangual, but that the $3,900 and $1,460.22 invested in the acquisition of the lots described in the first and second causes of action should be paid to the plaintiff from the cash existing in the inheritance of Mestre Caparrós to his widow Isabel Blanes Mangual and the three properties should be recorded in the Registry of Property as community property.

Plaintiff-appellant's brief contains seven assignments of error. The first charges that the trial court erred in not admitting in evidence and failing to consider, exhibits 1, 2, 3 and 4 as evidence presented by the plaintiff and not admitted. In the second assignment she alleges as error the failure to

apply to this case the jurisprudential doctrine to the effect that in lawsuits on the determination of separate property between husband and wife and in which third party interests or rights are not involved, "the courts should not be so exacting as to the sufficiency of the evidence"; and that "the proof, reasonably certain, of separate ownership in view of the circumstances is all that the law requires". The other errors assigned attack, in general terms, the findings of fact reached by the trial judge in deciding that the property in question was community property.

For the purposes of discussing the first error, it is necessary to summarize plaintiff's theory. She attempted to prove that in addition to the $55,000, proceeds from the sale of the property she inherited from her parents during her marriage to Mestre, as stated in the deed of partition of property left by them, she received other additional sums for valuable consideration which she also invested in the acquisition of the properties described in the complaint and that part of those sums proceeded from the inheritance from her father which did not appear in the deed of partition because the money appeared after the deed had been executed and which money was delivered to her in accordance with the agreement in the partition and division of inheritance to the effect that if there appeared other properties or rights pertaining to the inheritance, they would be distributed among the interested parties.

■ Exhibit 1, not admitted, is the original copy of a letter dated January 9, 1926 [1] in Mayagüez, Puerto Rico, written by Dr. Antonio Blanes, plaintiff's brother, addressed to his sisters María Luisa and Isabel. The first paragraph of this letter states:

---

[1] This letter must have been written on January 9, 1927, not in 1926 as erroneously stated therein since Antonio Blanes Mangual died on September 13, 1926 and the deed of partition of his property had been executed on November 10 of that year 1926. The error is also noticeable because the letter must have been necessarily written after the death of Blanes Mangual since (1) in it a certain amount of money of a legacy

"In accordance with our conversation, I attach herewith the money orders or checks, each one for $3,922.15, which amount corresponds to each one of you from the cash and legacy, according to the notes attached hereto.

"To María Luisa

| | |
|---|---|
| "Legacy | 2, 000 |
| "Cash left | 1, 922. 15 |
| | 3, 922. 15 |

"Isabel

| | |
|---|---|
| "Legacy | 2, 000 |
| "Cash left | 1, 922. 15 |
| | 3, 922. 15" |

The letter was duly identified by plaintiff's testimony as well as by that of María Cabrera widow of Blanes. The latter identified the letter's signature as that of her husband, Dr. Antonio Blanes Mangual, who had been dead for fifteen years at the time of the trial.

Plaintiff testified that together with that letter she received the remittance of $3,922.15 which her brother sent her in a check which she cashed. The document having been presented in evidence, the court refused to admit it on the ground that it was secondary evidence and that the evidence were the checks. Juan de Dios Rivera, in charge of the current account department of the Royal Bank of Canada, testified for the plaintiff. He identified an official certification taken from the records of said bank. The sheet was headed "January twenty-five, nineteen hundred and twenty-seven." On said sheet there appeared two withdrawals from the account of Dr. Blanes, made on January 11, 1927 for $3,922.15 each. The witness stated that said withdrawals showed that the checks were paid by the bank. Said certification having been presented, the court refused to accept it

---

is remitted to the plaintiff and her sister, and reference is made to the sum paid as inheritance tax in the statement of account accompanying it. On the other hand, the commission of this mistake is not unusual since the letter was written at the beginning of a new year, that is, during the first days of January 1927.

and marked it exhibit 3 of the plaintiff, presented and not admitted. Upon presenting said certification in evidence the defendants consented to its admission but then the trial judge asked them if they did not object notwithstanding that it concerned a different person. It was then that counsel for the defense objected the admission of said evidence as immaterial and irrelevant. As a result of this objection, the judge denied admission of the document.[2]

The impossibility of presenting in evidence the check or checks was completely established.

Plaintiff stated that she did not have the check because when she cashed it, the bank returned the cancelled checks. The head of the Current Account Department of the Royal Bank of Canada testified that the Bank, because of the time elapsed, did not keep a photostatic copy of those checks and that besides, checks were sent to the client at the end of each month. María Cabrera, widow of Dr. Blanes who drew the checks, testified that when her husband died all his documents such as books, correspondence, checks, etc., remained in her

---

[2] This incident appears from the record thus:

"Mr. Marcos Morales:

"Q. Let's get to that. Where are those payments?

"A. Here they are.

"Q. Then on January eleven, nineteen hundred and twenty-seven, which is this amount on said date, there appear two withdrawals by Dr. A. Blanes?

"A. Yes, sir.

"Q. That is all.

"Hon. Judge:

"Q. And that is what this certification amounts to?

"A. Yes, sir.

"Mr. Marcos Morales:

"There's no objection, admitted.

"Hon. Judge:

"It is then admitted, there is no objection? You admit it even if it is a different person?

"Mr. Marcos Morales:

"I object because it has no relation whatsoever to the case, it is irrelevant and immaterial. That is why I object.

"Hon. Judge:

"I deem it proper to receive it as an inadmissible document."

possession; that she destroyed the old documents, for which reason she did not have the two checks in question in her possession.

Thus, granting that the checks were the best evidence that the same had been drawn and collected by the plaintiff and by her sister, secondary evidence of that fact was not inadmissible in view of the impossibility of producing the best evidence. *Santiago* v. *Martínez*, 72 P.R.R. 873, 876; *Burgos* v. *Báez*, 17 P.R.R. 599, 602. *Cf. People ex rel. Rodríguez* v. *Gelpí*, 32 P.R.R. 126, 130.

Plaintiff tried to present those two documents (exhibits 1 and 3) in order to corroborate her testimony that she had received and cashed the check for $3,922.15, and had invested said amount in the acquisition of the property in question. The decision of the case depended, for the most part, on the credit given to the plaintiff's testimony, and everything indicates that the controlling issue for the trial judge was the evidence concerning the additional amounts to the $55,000 which plaintiff alleged having contributed to the marriage as her separate property. Plaintiff was not given credit. It is thus indicated by the following conclusion of the trial court:

"(3) It has not been proved that the plaintiff, Isabel Blanes Mangual brought to her marriage with Salvador Mestre Caparrós any other amount of money or property than the $55,000 admitted by the defendant party and that these fifty-five thousand dollars were the proceeds of the sale of the real property of the inheritance left by plaintiff's parents."

We do not find defendants' argument to be of weight to the effect that the error, if committed, was not prejudicial to the appellant because the trial court had proof before it, independent of the fact it attempted to establish. Nevertheless, since the other evidence was oral, it would not be easy to decide whether the refusal of the court to give credit to that evidence was due to the absence of that documentary evidence, the admission of which was denied.

Plaintiff stated that in 1927 she received a money order for $2,391.05 as share of the property left by her father in Palma de Mallorca, Balearic Isles. She identified a handwritten letter of February 25, 1927 in Palma, addressed to her sister María Luisa by Dr. Rafael Blanes with which he sent two money orders for $4,400.16 and $188.98 respectively, half for her and the other half for Isabel. The court refused to admit this document on the ground that the best proof was the money order or a record of the bank that made the remittance. The document was marked exhibit 2 of the plaintiff, presented and not admitted.

The sender of the letter, Dr. Rafael Blanes testified at a later hearing. He identified the document as written and sent by him together with two money orders from the Banco de Palma de Mallorca. He also testified as to this unsuccessful efforts to obtain from the above-mentioned bank a certificate of all the particulars necessary to present as best evidence the two money orders referred to in Exhibit 2 or any other evidence from the bank related to the two remittances made by Dr. Antonio Blanes himself from Palma de Mallorca to his sister María Luisa Blanes for $4,400.16 and $188.90 in February 1927. To this effect plaintiff presented, and it was admitted in evidence without objection, a certificate from the aforesaid bank showing that it did not have nor was able to furnish said evidence because "in accordance with the Act of May 30, 1941 substituting § 49 of the Code of Commerce, the essential and supplementary books on matters concerning said type as well as other types of transactions carried out prior to December 31, nineteen hundred and thirty-two were annulled and destroyed by this Bank". These facts having been established, the plaintiff again offered in evidence the letter referred to, but the court, without any objection from the adverse party and in advance of what they might object, stated the following: "That is not the objection of the other party, he says that the best evidence is

the record of the bank showing the remittance. The court sustains its refusal to admit it and it remains as evidence not admitted."

For the reasons stated upon arguing exhibits 1 and 3, the trial court committed error prejudicial to the plaintiff in refusing to admit exhibit 2 and in not considering it together with the rest of the evidence upon deciding the action.

■ The trial court also committed error in refusing the admission of plaintiff's exhibit 4 consisting of a final certification with a number of annexed certifications from engineer Jorge Valdejulli addressed to Isabel Blanes Mestre, which covers the construction on the lot in Caribe Street mentioned in the second cause of action.

Plaintiff proved that she had acquire said lot on Caribe Street on March 11, 1940 with her separate money as admitted by her husband Salvador Mestre in the deed of sale. She had also stated that on March 19 of the same year she made a contract with engineer Valdejulli for the construction of a house on said lot at a cost of $5,000, said contract having been admitted in evidence. She also stated that her husband did not intervene in the contract nor in the construction of that house. Said contract was marked as plaintiff's Exhibit 6, it is entitled "Contract of Construction" the appearing parties being only Isabel Mestre, who is referred to as the "owner" and Jorge Valdejulli who is referred to as the "contractor". According to this contract the owner was bound to pay the $5,000, price for the work, to the contractor, in the following manner: $350 at the moment of signing the contract in order to cover certain preliminary expenses, and the remainder in weekly certifications, which would be paid every Friday, for the amount of work done during the week and the material used therein. When the work was finished the contractor rendered the plaintiff a "Final Certification of the Price of Construction of a House of your Property on Caribe Street in Santurce, Puerto Rico." Said cer-

tification included an account of the amounts received in partial payments, and the amount owed by the owner to the contractor. It reads thus:

"Jorge Valdejulli
Engineer Contractor
Arizmendi Street No. 4
Río Piedras, P. R.
P. O. Box 187

Mrs. Isabel Blanes de Mestre
Santurce, P. R.

Final Certification of the price of construction of a house of your property at Caribe Street in Santurce, P. R.:

| | | |
|---|---|---:|
| Price of construction according to contract | | $5,000.00 |
| Amounts received: | | |
| | March 21, 1940 | 350.00 |
| | March 30, 1940 | 1,500.00 |
| | April 5, 1940 | 345.00 |
| | April 12, 1940 | 425.00 |
| | April 12, 1940 | 25.00 |
| | April 19, 1940 | 305.00 |
| | April 26, 1940 | 350.00 |
| | May 3, 1940 | 500.00 |
| | May 10, 1940 | 250.00 |
| | May 10, 1940 | 210.00 |
| | May 17, 1940 | 340.00 |
| | May 24, 1940 | 300.00 |
| Fees for inspection of light | | 3.00 |
| Total received | | 4,903.30 |
| Total owed | | 96.70 |

SEuo
(Sgd.) Jorge Valdejulli."

This documentary evidence which was rejected tended to corroborate plaintiff's statement about the basic fact in question and should have been admitted so that the court could give it whatever value and weight it might have for the same reason that it admitted the blueprints of the work, the contract of construction and the receipts of the property tax issued in the name of said plaintiff.

■ We have already rejected appellees' contention that even if the trial court committed error in refusing to admit the documentary evidence referred to, said error was not prejudicial to the plaintiff. Likewise we now reject their contention that we cannot review this error because plaintiff's lawyer did not object to the different rulings of the court. Since the Rules of Civil Procedure of 1943 took effect, the formal exceptions to the rulings and orders of the court are unnecessary. Rule 46, today Rule 42 of Civil Procedure.

It is unnecessary to discuss now the remaining assignments made by the appellant challenging the findings of fact of the trial court. This is not the moment to consider the effect of the evidence presented by the parties. Upon holding new trial, the trial court will weigh and evaluate said evidence in the light of the doctrines set forth by this Court in cases of this nature.[3]

In view of the foregoing the judgment rendered by the Superior Court on August 20, 1954, will be reversed and a new trial ordered.

---

[3] See *Blanes* v. *González,* 60 P.R.R. 553.